UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LANDIS REVIN NUTRACEUTICALS,

    Plaintiff,

    v.

ARTHUR ANDREW MEDICAL, INC.,
JUSTIN MARSH and TOM ALDRICH,

    Defendants.

NO. CIV. S-06-2114 FCD GGH

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants Arthur Andrew Medical, Inc. ("AA Medical"), Justin Marsh ("Marsh"), and Tom Aldrich ("Aldrich") (collectively, "defendants") motion to set aside entry of defaults on the ground the defaults were fraudulently procured by plaintiff Landis Revin Nutraceuticals' counsel, James B. Hicks, and for sanctions against counsel.[1]

The court heard oral argument on the motion on January 26, 2007.  For the reasons set

---

[1] Defendants moved for sanctions against Mr. Hicks and another counsel for plaintiff, Gary W. Park.  Both Mr. Hicks and Mr. Park are members of the firm Burke, Williams & Sorensen, LLP.  Mr. Hicks is the primary subject of the motion, as he is the attorney who signed the proofs of service attesting to the purported service of defendants; Mr. Park's role in this matter has been limited to the filing of the relevant motion and opposition papers.  As there are no direct allegations of wrongdoing asserted against Mr. Park, and considering Mr. Hicks' request at oral argument, that should the court impose sanctions, Mr. Hicks, alone, should bear the punishment, the court considers defendants' request for sanctions only as to Mr. Hicks.

1

forth below, defendants' motion is GRANTED and sanctions are imposed against Mr. Hicks in the amount of $10,716.00.[2]

**BACKGROUND**

On September 21, 2006, plaintiff Landis Revin Nutraceuticals ("plaintiff") filed a complaint alleging claims for copyright infringement, trade name infringement, false designation of origin and false description, unfair business practices, and unfair competition against AA Medical, an Arizona corporation, and two of its officers, Marsh and Aldrich, who reside in Arizona. (March Decl., ¶ 2-3; Aldrich Decl., ¶ 2.) Defendants assert several defenses to plaintiff's claims, including: (1) a third party appears to have attached a copy of a portion of plaintiff's website to AA Medical's trademark application, which has been subsequently corrected; (2) plaintiff copied on its website for its competing Trevinol product (a dietary supplement), AA Medical's copyrights in material describing AA Medical's Neprinol product; (3) plaintiff misappropriated AA Medical's trade secret business plans when it adopted and began using the name Trevinol to sell a competing product. (Marsh Decl., ¶ 13, Ex. B; Aldrich Decl., ¶ 11.)

On October 26, 2006, plaintiff filed a Request for Entry of Default as to each of the defendants ("Request for Default"). (Harlan Decl., filed Dec. 7, 2006, ¶ 2, Ex. A.) In the Request for Default, plaintiff stated that "[o]n September 22, 2006, the summons and complaint were served by registered mail on (1) Arthur Andrew Medical, Inc., a corporation; (2) Justin Marsh, an individual; and (3) Tom Aldrich, an individual." (Id. at Ex. A, 1:24-28.) As proof, plaintiff refers to the "Return of Service of Summons in a Civil Case," attached to the Request for Default as Exhibit "A." The

---

[2] Said amount represents the attorneys' fees incurred by defendants in moving to set aside the default. Defendants' counsel charges $285.00 per hour and she spent 37.6 hours on the motion and related correspondence with Mr. Hicks. (Harlan Decls., Docket #s 11, 16-2, and 30.) Plaintiff specifically objects (Docket # 31) to an award of fees for the 5.6 hours defendants' counsel spent in responding to plaintiff's sur-reply and at the hearing, arguing plaintiff did not have adequate notice of this request for fees. Plaintiff's objection is without merit. In their moving papers (as is customary on such motions), defendants sought leave to amend their fees request to include time spent on any reply and at the hearing, and thus, plaintiff had adequate notice of the request for additional fees.

Return of Service of Summons referenced attaches three proofs of service signed under penalty of perjury by plaintiff's counsel, Mr. Hicks, on October 26, 2006, the same day the Request for Default was filed. <u>Id.</u> Mr. Hicks asserts in each proof of service that:

> 2.   On September 22, 2006, I served the Summons and Complaint in this matter on defendant . . . [naming each defendant], by placing such documents, enclosed in a sealed envelope, addressed to . . . [listing each defendant's name and address], and mailed by first class mail, postage prepaid, requiring a return receipt, pursuant to California Code of Civil Procedure § 415.40.
>
> 3.   *I subsequently received the return receipt, showing that such defendant had signed for receipt of the envelope containing the Summons and Complaint.*

(<u>Id.</u> at Ex. A [emphasis added].) Mr. Hicks' proofs of service did not attach copies of the return receipts. Pursuant to plaintiff's request, defaults were entered against each of the defendants on October 27, 2006. (Docket # 7.)

Defendants maintain they were not served with copies of the summons and complaint as represented in the Request for Default and the proofs of service. Defendants only received a courtesy copy of the complaint, which was attached to a letter sent via facsimile on September 22, 2006 by Mr. Hicks to defendants' counsel; said letter stated that plaintiff would be forced "to protect its rights through actual litigation" unless defendants ceased and desisted the alleged infringing activity and settled the dispute. (Marsh Decl., ¶s 5-6, Ex. A; Aldrich Decl., ¶s 3-4, Ex. A.)

Defendants assert they had no other communication from plaintiff or its attorneys until they received a copy of the Request for Default on or about October 26, 2006. (Marsh Decl., ¶ 10; Aldrich Decl., ¶ 8.) They never received a copy of the summons and complaint by first class mail, registered or certified. (Marsh Decl., ¶ 6; Aldrich Decl., ¶ 4.) They never signed a return receipt for the delivery of the summons and complaint. (Marsh Decl., ¶ 7; Aldrich Decl., ¶ 5.) No member of their households or officer or employee of AA Medical received copies of the summons and complaint or signed return receipts on their behalf. (Marsh Decl., ¶s 8-9; Aldrich Decl., ¶s 6-7.) Thus, defendants contend that Mr. Hicks' sworn statement that he served defendants with the summons and complaint on September 22, 2006 and that he received signed

return receipts from defendants is false.

On October 31, 2006, defendants' counsel, Julie Harlan, left Mr. Hicks a voicemail message advising him that her clients never were served with copies of the summons and complaint and requesting to see copies of the signed return receipts he allegedly received. (Harlan Decl., ¶ 4.) Later that day, Ms. Harlan sent a letter to Mr. Hicks via facsimile and mail reiterating her request for the return receipts. (Id. at ¶ 5, Ex. B.) Ms. Harlan asked for Mr. Hicks' assistance in setting aside the defaults if he found, after a review of his records, that the Request for Default was filed in error. (Id.)

Mr. Hicks did not respond until November 8, 2006. Initially, he ignored Ms. Harlan's requests that he provide copies of the signed return receipts, and instead demanded that defendants make a settlement offer. (Id. at ¶ 6, Ex. C.) Mr. Hicks later refused to produce copies of the return receipts, stating that his proofs of service evidenced service. (Id.) Ms. Harlan then sent Mr. Hicks a copy of a return receipt form to assist him in locating the receipts, but Mr. Hicks did not respond to her request to show evidence of actual delivery of the summons and complaint. (Id. at ¶s 6-7, Ex. C and D.)

Defendants contend that evidence of actual delivery should have been easily produced if indeed Mr. Hicks served defendants as he claims. He could have simply produced the receipts, which would show the date of delivery of the summons and complaint and the recipient defendant's signature. Additionally, defendants assert that the date of mailing, time of delivery, and delivery attempts can be verified online for registered mail. (Id. at ¶ 9, Ex. F.) If the summons and complaint had been mailed by certified, rather than registered mail, the United States Postal Office can provide evidence of the date of mailing and the date and time of delivery. (Id.)[3] Yet, none of this evidence was or has been provided by plaintiff's counsel to date.

Then, for the first time, on January 24, 2007, just two days prior to the hearing, in a sur-

---

[3] The court may properly take judicial notice of the relevant procedures of the United States Postal Service; evidence of said procedures was provided by defendants. Fed. R. Evid. 201.

4

1 reply not authorized by the court, plaintiff disclosed that the signed return receipts were
2 "inadvertently misplaced." Significantly, said explanation was provided in plaintiff's sur-reply
3 *brief*, with *no* accompanying declaration from Mr. Hicks.

4 At oral argument, Mr. Hicks stated that he recalls receiving the return receipts (the
5 "green cards") and seeing defendants' signatures on them or, at least, seeing "someone's"
6 signatures on them prior to filing the proofs of service on October 26, 2006. He stated that he
7 first discovered the receipts were missing in or about late October 2006/early November 2006,
8 when Ms. Harlan first contacted him about the entry of default. Yet, he did not inform Ms.
9 Harlan that the receipts were missing; instead, Mr. Hicks claims that because he believed his
10 proofs of service were sufficient evidence of service, he did not tell Ms. Harlan that the receipts
11 were missing. Even after defendants filed the instant motion, seeking to set aside the defaults
12 and accusing Mr. Hicks of fraud, he still did not disclose that the receipts were missing. In fact,
13 Mr. Hicks did not file a declaration in support of the opposition, and plaintiff's opposition brief
14 provided no explanation whatsoever for why the return receipts had not been produced by
15 plaintiff. Then, inexplicably, only two days before the hearing, did plaintiff provide an
16 explanation at all--that the receipts were inadvertently misplaced. However, still, Mr. Hicks did
17 not provide a declaration attesting to the circumstances and his purported reasons for failing to
18 produce the receipts.

19 As a result of plaintiff's counsel's conduct, defendants state they have incurred attorneys'
20 fees to set aside the defaults in the amount of $10,716.00. Defendants move for an award of
21 these fees as a sanction against counsel, pursuant to 28 U.S.C. § 1927 and/or the court's inherent
22 authority, for allegedly filing the Request for Default in bad faith, defrauding the court and
23 unnecessarily and vexatiously increasing the costs of litigation.

## STANDARD

25 A court has the power to set aside a default for good cause. Fed. R. Civ. P. 55(c).[4] A

---

[4] Fed. R. Civ. P. 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment of default has been entered, may likewise set it aside in accordance with Rule 60(b)."

5

Case 2:06-cv-02114-FCD-GGH   Document 32   Filed 02/01/07   Page 6 of 10

court's discretion to set aside a default is "especially broad" when "it is entry of default that is being set aside rather than default judgment." Brady v. United States, 211 F.3d 499, 504 (9th Cir. 2000). "Good cause" exists in the case of "fraud . . ., misrepresentation, or other misconduct of an adverse party" or "other grounds justifying relief." Fed. R. Civ. P. 55(c)(default may be set aside for same reasons default judgment may be set aside [Fed. R. Civ. P. 60(b)(3), (6)]).[5]

**ANALYSIS**

**1.   The Defaults**

Under California law, when a party elects to serve an out-of state defendant by mail pursuant to California Code of Civil Procedure § 415.40,[6] the proof of service must include "*evidence satisfactory to the court* establishing actual delivery to the person to be served, by a signed return receipt or other evidence." Cal. Code Civ. Proc. § 417.20 (emphasis added). Plaintiff asserts that the statements in Mr. Hicks' proofs of service, alone, are sufficient to establish service under California law. While said proofs may have complied with Section 417.20's requirements, *i.e.*, by provision of "other evidence" of actual delivery, sufficient for entry of default by the Clerk of the Court, a different inquiry is relevant *now*. See Bolkiah v. Sup. Ct., 74 Cal. App. 4th 984, 1000-01 (1999) (noting that Section 417.20 does not *require* proof of actual delivery via a signed return receipt but does require proof via "evidence" which is "satisfactory to the court.")

---

[5] Plaintiff's reliance on cases involving motions to set aside defaults on the basis of excusable neglect are inapposite. (Opp'n, filed Dec. 26, 2006, at 4:27-6:4.) In those cases, courts considered the so-called "good cause factors" of (1) whether the defaulting party has a meritorious defense, (2) whether culpable conduct on the part of the defaulting party lead to the default, and (3) whether the non-defaulting party would be prejudiced, because there was no dispute the summons and complaint were in fact served on the defendants, and thus, the inquiry focused on the *defendants'* reasons for their failure to respond to the complaint. Here, defendants did not fail to respond to the complaint because they were negligent; rather, they contend they failed to respond to the complaint because plaintiff never served them. Plaintiff cites no case providing that the good cause factors for excusable neglect apply to decide whether to set aside a default that was allegedly fraudulently obtained.

[6] Section 415.40 provides in pertinent part, "A summons may be served on a person outside this state, in any manner provided by this article or by sending a copy of the summons and complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt. Service of a summons by this form of mail is deemed complete on the 10th day after such mailing."

6

By the motion, defendants challenge the entry of default as fraudulently procured. As expressly stated in Section 417.20, evidence of actual delivery must be "satisfactory to the court." In light of defendants' absolute denial of receipt of the summons and complaint, made under *penalty of perjury* in sworn declarations submitted to the court, it was incumbent upon plaintiff's counsel to provide *further* proof of the alleged actual delivery. Yet, plaintiff's counsel did not do so, apparently unable to do so because the receipts were "misplaced." However, counsel did not initially reveal this fact to defendants' counsel or this court; instead, plaintiff filed an opposition brief, wholly failing to explain why the return receipts could not be produced. Rather than set forth an explanation, plaintiff's brief attempted to turn the focus on defendants and argue that they were somehow culpable in this process.

In its opposition, plaintiff emphasized that defendants allegedly had "actual notice" of the complaint against them as of September 22, 2006 when plaintiff's counsel sent the cease and desist letter to defendants' counsel, attaching a copy of the complaint. However, even if a defendant has actual notice of a lawsuit, it must still be *served* in compliance with California law. Renoir v. Redstar Corp., 123 Cal. App. 4th 1145, 1152 (2004). *Service* is the issue here not "notice" of the lawsuit; defendants were not obligated to respond to a complaint that was not *served* on them. Cal. Code Civ. Proc. § 415.40 (receipt of a copy of the complaint via facsimile is not effective service). It is also noteworthy that the cease and desist letter did not attach a copy of the summons, but rather only the complaint, and thus, defendants were not on notice of when their response to the complaint was due.

Moreover, plaintiff's citation to Bolkiah v. Sup. Ct., 74 Cal. App. 4th 984 (1999) to argue that there has been sufficient evidence of service provided in this case is unpersuasive. Bolkiah involved a motion to quash service of the summons and complaint for defective service of process. Unlike the facts here, it was undisputed in Bolkiah that the plaintiff actually mailed the summons and complaint, multiple times, to the defendants, in addition to effecting substituted service and service by publication. Id. at 1000-01. This was found sufficient to show actual delivery of the summons and complaint pursuant to Section 417.20 and the motion to quash was

///

7

denied.[7] Id.

By contrast, in the instant case, there is no evidence, other than Mr. Hicks' word, that plaintiff actually mailed the summons and complaint on September 22, 2006 as represented to the court. Mr. Hicks' word is suspect under the circumstances, where, even in the face of accusations of fraud, he refused, until two days before the hearing, to explain to defendants and the court that the purported receipts were missing. By his own admission, counsel knew the receipts were missing in late October 2006/early November 2006; counsel should have immediately disclosed this fact to defendants and worked with defendants to set aside the defaults, as counsel must have known that it would be extremely difficult to *prove* service on defendants without the receipts. Counsel did not work with defendants and instead, forced defendants to file this motion, refusing only until the last possible moment to disclose all the relevant facts.

On this motion, it is plaintiff's burden to demonstrate by evidence "satisfactory to the court" that defendants were served. Under the circumstances set forth above, the court finds that plaintiff has not met its burden. Indeed, the court finds plaintiff's proof wholly lacking, particularly considering the incredible explanation by its counsel. Under the facts here, there is abundant good cause to set aside the entry of defaults against defendants.

### 2. **Sanctions**

Defendants request that the court sanction plaintiff's counsel, pursuant to 28 U.S.C. § 1927 and/or its inherent authority, by ordering counsel to pay the attorneys' fees incurred by defendants in seeking to set aside the defaults. Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions may be imposed under Section 1927 where an attorney engaged in conduct in bad faith, with improper motive, or a reckless disregard of the duty owed to the court. New Alaska Develop. Corp. v. Guetschow, 869 F.2d 1298, 1306

---

[7] In Bolkiah, it was also undisputed that the plaintiff did not receive any signed return receipts from the defendants. Id. at 999.

8

(9th Cir. 1989).

A federal court also has inherent power to impose sanctions against both attorneys and parties for "bad faith" conduct in litigation, even if the conduct is sanctionable under other rules such as Federal Rule of Civil Procedure 11 or Section 1927. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). However, a court must make a specific finding of bad faith to support sanctions pursuant to its inherent power. Id. "Bad faith" conduct includes findings that a lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Id. at 45-46. Recklessness combined with other factors such as frivolousness, harassment, or an improper purpose, may constitute bad faith warranting sanctions under a court's inherent power. B.M.K. v. Maui Police Dep't, 276 F.3d 1091, 1106 (9th Cir. 2002). Sanctions under the court's inherent power are particularly appropriate for fraud practiced upon the court. Chambers, 501 U.S. at 54. "Fraud on the court" involves an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995).

While the court cannot make a definitive finding of fraud here, it nonetheless imposes sanctions against Mr. Hicks under Section 1927 as the court finds Mr. Hicks engaged in bad faith conduct or, at a minimum, reckless conduct in disregard of his duties owed to the court, which unnecessarily and unreasonably multiplied these proceedings. New Alaska Develop. Corp., 869 F.2d at 1306. As set forth above, Mr. Hicks knew at the time defendants' counsel first contacted him regarding the entry of defaults, that he did not have the signed return receipts he claimed to have received in his proofs of service filed in support of the Request for Default. Yet, he did not inform counsel of this fact, and instead claimed that by law, he did not have to produce the receipts. Mr. Hicks' actions forced defendants to file the instant motion. Then, yet again, counsel did not reveal that the purported receipts were missing; indeed, he filed no declaration on the motion, and plaintiff's briefing simply relied on Mr. Hicks' prior proofs of service and wholly unavailing arguments that defendants were responsible for the entry of defaults and/or had sufficient notice of this action, requiring them to respond. It was only two days before the hearing that the court and defendants were informed that Mr. Hicks did not have the receipts.

Then, it took until the hearing for Mr. Hicks to personally provide an explanation; again, even on the sur-reply, Mr. Hicks did not file a declaration. Under the circumstances of this motion, in which an attorney faces charges of fraud, it is inconceivable to the court that Mr. Hicks would not, upon the first opportunity to do so, file a sworn declaration attesting to the circumstances and his reasons for failing to produce the receipts. Particularly because Mr. Hicks did not do so, his belated explanation is not credible. Indeed, at oral argument, counsel's explanation of the circumstances was ever-changing. Counsel represented in his proofs of service that *he* placed the summons and complaint in the mail, via registered mail; at hearing, he said he used certified mail and that his secretary mailed the documents. Counsel also stated vigorously that he recalls seeing defendants' signatures on the return receipts when he received them (as he represented to the court in the proofs of service), but at hearing, he said that since the service location was an apartment complex, "anybody" could have signed for them. At present, counsel said his best recollection is that he recalls seeing defendants' signatures, however, he could not be certain, and at least, he recalls that "someone" had signed for them. Counsel's remarks are highly concerning to this court and further justify, in conjunction with counsel's conduct on the motion, an award of sanctions on this matter.

## CONCLUSION

For the foregoing reasons, defendants' motion to set aside defaults is GRANTED. The Clerk of the Court is directed to set aside the defaults, entered October 27, 2006, against defendants. Plaintiff's counsel, James B. Hicks, is sanctioned in the amount of $10,716.00 pursuant to 28 U.S.C. § 1927. Counsel shall pay defendant AA Medical the sum total of $10,716.00, via cashier's check, within 30 days of the date of this order.

Plaintiff shall serve defendants with the summons and complaint within 30 days of the date of this order. Defendants shall file an answer or otherwise respond to the complaint within 20 days of service thereof.

IT IS SO ORDERED.

DATED: February 1, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE